1
2
3
4
5                          **UNITED STATES DISTRICT COURT**
6                               **DISTRICT OF NEVADA**
7
8    WATERFALL HOMEOWNERS ASSOCIATION, )
     *et al.*,                                            )
9                                                         )
                        Plaintiffs,               )        Case No.  2:11-cv-01498-JCM-GWF
10                                                       )
     vs.                                              )   <u>**ORDER**</u>
11                                                      )
     VIEGA, INC., *et al.*,                     )        **Joint Motion to Sever Claims - #49**
12                                                      )
                        Defendants.             )
13   _____)

14        This matter is before the Court on the Vanguard/Viega Defendants' Joint Motion to Sever

15   Claims against Different Products (#49), filed on December 2, 2011; Defendant Centex Homes'

16   Joinder in the Motion to Sever (#54), filed on December 13, 2011; Joinder of the Defendants

17   Uponor, Inc. and Uponor Wirsbo Company in the Motion to Sever (#56), filed on December 19,

18   2011; Plaintiffs' Opposition to the Motion to Sever (#57), filed on December 19, 2011; and the

19   Vanguard Defendant's Reply in Support of Motion to Sever (#59), filed on December 29, 2011.

20                                      <u>**BACKGROUND**</u>

21        This action involves claims for damages and other relief brought by two Nevada

22   Homeowners Associations, individually and in their representative capacities,  involving allegedly

23   defective "yellow brass" plumbing fittings and components that were installed in the residences of

24   the associations' members.  Plaintiff Red Bluff At The Crossings Owners Association ("Red

25   Bluff") represents the owners of 272 condominium units.  Plaintiff Waterfall Homeowners

26   Association ("Waterfall") represents the owners of 734 single family residences.  Both residential

27   developments were constructed by Defendant Centex Homes.  Defendants Dynamic Plumbing

28   Systems, Inc. and Interstate Plumbing and Air Conditioning, Inc. installed the potable water

1    systems in the subject residences.  Both Dynamic Plumbing Systems and Interstate Plumbing

2    performed plumbing work in the Waterfall development.  Plaintiffs allege that Defendant Interstate

3    Plumbing installed Uponor/Wirsbo yellow brass plumbing fittings in the Waterfall residences and

4    that Dynamic Plumbing installed the Vanguard/Viega yellow brass fittings.  Plaintiffs allege that

5    only the Vanguard/Viega products were installed in the Red Bluffs development.

6         Plaintiffs characterize the subject residences as either "Vanguard Homes" or "Wirsbo

7    Homes" which they define as "all residences in the Las Vegas Valley that contain or contained

8    potable-water-delivery systems utilizing defective high-zinc-content brass [Vanguard/Viega or

9    Uponor/Wirsbo] brand fittings and attendant high-zinc-content brass plumbing components."

10   *Complaint (#1)*, ¶¶ 13, 15.  Plaintiffs allege that the plumbing systems and components in both sets

11   of homes have "prematurely failed due to dezincification, which is a well-known form of corrosion

12   attack to the high-zinc-content brass components."  *Id.*  Plaintiffs seek to certify a class consisting

13   "of all similarly situated Nevada common-interest communities, as statutory claimants on behalf of

14   themselves and their members (residence owners), and others in the Las Vegas Valley whose

15   residences, or whose members' residences, contain defective high-zinc-content brass

16   Vanguard/Viega-brand or Wirsbo/Uponor-brand potable-water-delivery systems and attendant

17   high-zinc-content brass plumbing components."  *Complaint (#1)*, ¶ 32.  Plaintiffs allege causes of

18   action for breach of the implied warranties of fitness for a particular purpose, merchantability,

19   habitability, quality and workmanship, breach of express warranties, negligence, including

20   negligent misrepresentation, failure to warn/instruct, negligent selection and negligent installation,

21   strict products liability, declaratory and equitable relief, and violation of the Nevada Deceptive

22   Trade Practices Act.[1]

23        Defendants have moved to sever Plaintiffs' claims against the Vanguard/Viega Defendants

24   from their claims against the Uponor/Wirsbo Defendants on the grounds that the Defendants "sold

25   different products with different metallurgical characteristics, made to different industry standards,

26

27        ───────────────────────

28        [1] Centex Homes and the two plumbing contractors have been sued based on their
     involvement in the selection and use of the yellow brass fittings in the subject residences.

1    to different customers for installation at different locations." *Motion to Sever (#49)*, pgs. 2-3.  The

2    Uponor/Wirsbo Defendants state in their joinder that the Uponor/Wirsbo and Vanguard/Viega brass

3    fittings have been manufactured pursuant to different American Society for Testing & Materials

4    (ASTM) standards.  The Uponor/Wirsbo fittings are manufactured pursuant to the ASTM F1960

5    standard, while the Vanguard/Viega fittings are manufactured pursuant to ASTM F1807 standard.

6    The designs of the fittings involve different methods for attaching them to non-metallic water

7    piping or tubing.  The Uponor/Wirsbo Defendants state that "the F1960 Uponor/Wirsbo fitting has

8    a greater wall thickness which affects the performance of the fitting and *increases* that fitting's

9    resistance to "through-wall" corrosion as opposed to the F1807 Vanguard/Viega fitting." *Joinder*

10   *(#56)*, pg. 4.  The Uponor/Wirsbo Defendants also argue that their fitting has a larger cross

11   sectional area than the Vanguard/Viega fitting which results in greater water flow through the

12   fitting which also impacts dezincification/corrosion, and has a greater minimal internal diameter

13   which also impacts the performance of the Uponor/Wirsbo fitting as compared to the

14   Vanguard/Viega fitting. *Id.*  Defendants argue that because of these product differences, there is a

15   substantial danger of jury confusion and potential prejudice to the Defendants if the claims are tried

16   together.  Defendants also argue that joinder of both sets of Defendants will result in unnecessary or

17   inefficient discovery because each Defendant will be required to participate in discovery relating to

18   the other manufacturer-defendant, rather than focusing solely on the claims involving its product.

19        Plaintiffs argue that their claims against the Vanguard/Viega and Uponor/Wirsbo

20   Defendants are properly joined because this case concerns a common product defect–the

21   dezincification of the  yellow brass fittings used in the potable water systems of the subject

22   residences.  Plaintiffs allege that both Defendants' fittings and components are made of "high zinc

23   yellow brass" which Plaintiffs define as "a general class of brass alloy that contain 35-38% zinc."

24   Plaintiffs allege that "[t]he problem with high-zinc yellow brass fittings of any kind or type is that

25   they have been known for many years to corrode in use." *Opposition (#57)*, pg. 4.

26        Plaintiffs have attached the report of their expert, David Coates of Coates Engineering

27   Services, Inc., regarding his inspection of Vanguard/Viega yellow brass fittings removed from

28   residences in the Waterfall community. *Opposition (#57), Exhibit 1.*  According to Mr. Coates,

3

"[y]ellow brasses containing greater than 15% zinc are generally found to be susceptible to dezincification corrosion.  The fittings and valves analyzed contained approximately 34-40% zinc and showed a two phase (alpha-beta) microstructure." *Id.* pg. 3.  Mr. Coates goes on to state that based on his examination of the fittings and valves from the Waterfall development and:

> CES' experience, examination and/or evaluation of hundreds of similar fittings and valves used in plumbing systems throughout the Las Vegas Valley, which collectively represent a valid and reliable sampling of high zinc content brass plumbing fittings and valves, it is my opinion that all similarly situated residences within the Waterfall development and the Las Vegas Valley with high zinc content (> 15% Zn) yellow brass plumbing fittings and valves will suffer similar degradation due to dezincification corrosion attack leaving porous, brittle copper rich matrices and accumulations of zinc corrosion products (meringue), leading to failure (e.g., reduced material strength and integrity; reduced water flow; water leakage; and/or cracks).   It is my further opinion that the degradation of the brass due to dezincification corrosion has or will cause all high zinc content brass fittings and valves in the Waterfall development and throughout the Las Vegas Valley to fail prior to reaching their expected and/or warranted useful life.

*Opposition (#57), Exhibit 1*, pg. 3.

Neither Mr. Coates' report nor Plaintiffs' Opposition specifically address Uponor/Wirsbo's argument that the design differences in the Defendants' yellow brass fittings and valves may effect whether they suffer dezincification corrosion, or the rate at which such corrosion and resulting failure occurs.  It appears to be Plaintiffs' position that the design differences in the Vanguard/Viega and Uponor/Wirsbo fittings are immaterial to the issue of their defectiveness based on the high zinc content in both sets of fittings.

## DISCUSSION

Rule 20(a)(2) of the Federal Rules of Civil Procedure provides that "[p]ersons . . . may be joined in one action as defendants if:  (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any questions of law or fact common to all defendants will arise in the action."  Subparagraph (a)(3) of the Rule further provides that "[n]either a plaintiff nor a defendant need be interested in obtaining or defending against all the relief demanded.  The court may grant judgment to one or more plaintiffs according to their rights, and against one or

4

1   more defendants according to their liabilities."

2      Rule 20(b) states that the court may issue orders, including an order for separate trials, to

3   protect a party against embarrassment, delay, expense, or other prejudice that arises from including

4   a person against whom the party asserts no claim and who asserts no claim against the party."

5   Rule 21 further provides that on motion, or on its own, the court may at any time, on just terms, add

6   or drop a party.  The court may also sever any claim against a party.

7      In order for joinder to be proper under Rule 20(a) both requirements of the rule, the same

8   transaction or occurrence and common issues of law or fact, must be satisfied.  *League to Save*

9   *Lake Tahoe v. Tahoe Regional Planning Agency*, 558 F.2d 914, 917 (9th Cir. 1977); *Coughlin v.*

10  *Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997).  Rule 20 "is to be construed liberally in order to

11  promote trial convenience and to expedite the final determination of disputes, thereby preventing

12  multiple lawsuits."  *League to Save Lake Tahoe*,  557 F.2d at 917 (9th Cir. 1977), citing *Mosely v.*

13  *General Motors Corp.*, 497 F.2d 1330 (8th Cir. 1974).

14     In construing the meaning of "transaction or occurrence" under Rule 20(a), the Eighth

15  Circuit in *Mosely v. General Motors Corp*. stated as follows:

16          In ascertaining whether a particular factual situation constitutes a
            single transaction or occurrence for purposes of Rule 20, a case by
17          case approach is generally pursued.  7 C. Wright Federal Practice and
            Procedure § 1653 at 270 (1972).  No hard and fast rules have been
18          established under the rule.  However, construction of the terms
            'transaction or occurrence' as used in the context of Rule 13(a)
19          counterclaims offers some guide to the application of this test.  For
            the purposes of the latter rule,

20

21              Transaction' is a word of flexible meaning.  It may
                comprehend a series of many occurrences, depending not so
22              much upon the immediateness of their connection as upon
                their logical relationship.

23      *Moore v. New York Cotton Exchange*, 270 U.S. 593, 610, 46 S.Ct.
        367, 371, 70 L.Ed. 750 (1926).  Accordingly, all 'logically related'
24      events entitling a person to institute a legal action against another
        generally are regarded as comprising a transaction or occurrence.  7
25      C. Wright, Federal Practice and Procedure § 1653 at 270 (1972).  The
        analogous interpretation of the terms as used in Rule 20 would permit
26      all reasonably related claims for relief by or against different parties
        to be tried in a single proceeding.  Absolute identity of all events is
27      unnecessary.

28      497 F.2d at 1333.

                                        5

1  The Vanguard/Viega Defendants have argued in another action brought against

2  Vanguard/Viega and Uponor/Wirsbo that the Ninth Circuit does not follow the "logically related"

3  test set forth in *Mosely*. *See* Charleston and Jones, LLC v. Uponor, Inc., et al., Case No. 2:11-cv-

4  01637-KJD-GWF, *Reply in Support of Joint Motion to Sever (#37)*, pgs. 4-5. In support of this

5  assertion, Defendants cite *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997) in which the

6  court cited *Mosley*, but did not specifically address the "logically related" test. This Court finds no

7  basis for the assertion that the Ninth Circuit has rejected *Mosley* or has adopted a stricter

8  interpretation of "transaction or occurrence." *Mosley* was cited with apparent approval by the

9  Ninth Circuit in *League to Save Lake* Tahoe, 558 F.2d at 917, and it has been relied on by the Ninth

10  Circuit in construing "transaction or occurrence" as used in Rule 13(a). *See Pochiro v. Prudential*

11  *Ins. Co. of Am.*, 827 F.2d 1246, 1249 (9th Cir. 1997).

12  There is also nothing in the facts or holding of *Coughlin v. Rogers* to suggest that the court

13  rejected *Mosley* or adopted a more restrictive definition of transaction or occurrence. *Coughlin*

14  involved a lawsuit for mandamus relief brought by twenty plaintiffs against the director of the

15  Immigration and Naturalization Service (INS). The plaintiffs alleged that the INS was guilty of

16  delay in adjudicating their applications and petitions. The court held, however, that the mere

17  allegation of general delay was not enough to create a common transaction or occurrence. The

18  court stated that each plaintiff had waited a different length of time, suffered a different duration of

19  delay, that the delay in some instances was disputed and most importantly there were numerous

20  reasons for the alleged delay. The court found that the plaintiffs did not allege that their claims

21  arose "out of a systematic pattern of events" and, therefore, their claims did not arise from the same

22  transaction or occurrence. *Coughlin*, 130 F.3d at 1350. *Coughlin* is consistent with the decision in

23  *Mosley* which upheld the joinder of plaintiffs' racial discrimination claims because they were based

24  on an alleged "company-wide policy purportedly designed to discriminate against blacks in

25  employment." *Mosley*, 497 F.2d at 1333-4.

26  Several district court decisions within the Ninth Circuit have relied on *Mosley's*

27  interpretation of "transaction or occurrence," which also indicates that it is valid precedent within

28  this circuit. *See Hill v. R+L Carriers,* Inc., 2011 WL 1990651, *2 (N.D.Cal. 2011); *Hysell v.*

*Schwarzenegger*, 2011 WL 2678829, * (E.D.Cal. 2011) ("The same transaction requirement in Rule 20 refers to similarity in the factual background of the claims; claims that arise out of a systematic pattern of events and have a very definite logical relationship arise out of the same transaction and occurrence." (internal quotation marks omitted)); *Coalition for a Sustainable Delta v. United States Fish and Wildlife Service*, 2009 WL 3857417, *4 (E.D.Cal. 2009); *In re the Matter of Direct TV, Inc.*, 2004 WL 2645971, *3 (N.D.Cal. 2004); and *Aikins v. St. Helena Hospital*, 1994 WL 796604 (N.D. Cal. 1994).

Joinder under Rule 20(a) arises in regard to a wide variety of claims and parties. In deciding the instant motion, the Court looks chiefly to cases involving defective product claims. The Court does so, not because product defect claims are subject to their own distinct joinder rules, but rather because they illustrate the circumstances in which such claims by or against more than one party may or may not be properly joined.

In *Abraham v. Volkswagen of America, Inc.*, 795 F.2d 238 (2nd Cir. 1986), one hundred nineteen plaintiffs joined in a lawsuit alleging that their Volkswagen automobiles were defective because of excessive oil consumption, engine damage and failure, or decreased sales value. The amended complaint alleged that all of the claimed damages resulted from a single defective part, the valve stem seal, which was supposed to prevent oil from leaking into the engine's combustion chamber. *Id.* at 240. The district court held that because some of the alleged mechanical problems did not occur on all cars and the mileage at which repairs were required varied greatly, the plaintiffs had not satisfied the same transaction or occurrence requirement under Rule 20(a). In rejecting this holding, the Second Circuit stated that all of the plaintiffs alleged "as the basis for their claims the purchase of a Volkswagen Rabbit with a valve stem seal made of defective material that will cause it to harden and break over time. We think that amply satisfied the requirement of a series of logically related transactions. *See* 7 C. Wright and A. Miller *Federal Practice and Procedure* §1653 (1972)." *Id.* at 251.

In contrast to *Abraham*, the court in *Saval v. BL Ltd.*, 710 F.2d 1027 (4th Cir. 1983) held that the claims of the owners of three or four Jaguar automobiles did not arise out of the same transaction or occurrence for purposes of joinder under Rule 20(a). The vehicles allegedly

developed mechanical problems involving fluid leakage from the power steering system, engine overheating, engine and transmission oil leakage, vibration and pulsation of the front brakes, malfunctioning of the climate control system and malfunctioning of the electrical system. The plaintiffs believed that these problems resulted from a faultily designed cooling system. Each plaintiff was required to have his or her Jaguar repaired a number of times, but the problems were never remedied completely. *Id.* at 1029. The district court concluded that the claims did not arise from the same transaction or occurrence. The court stated that plaintiffs ignored the differences between the unique history of each automobile and had not demonstrated that any of the alleged similar problems resulted from a common defect. The Fourth Circuit stated that "[t]he district court did not err in determining that the allegedly similar problems did not satisfy the transaction or occurrence test. The cars were purchased at different times, were driven differently, and had different service histories. Quite probably severance would have been required in order to keep straight the facts pertaining to the separate automobiles." *Id.* at 1031.

District court decisions have relied on *Abraham* in upholding the joinder of product liability claims against a manufacturer or distributor, even though the individual plaintiffs' injuries and damages resulting from the alleged defect may differ. *See In re Stand 'N Seal, Products Liability Litigation*, 2009 WL 2224185 (N.D.Ga. 2009) (joinder of claims by seven plaintiffs for injuries allegedly caused by hazardous substance in grout sealer); *Poleon v. General Motors Corp.*, 1999 WL 1289473 (D.Vi. 1999) (joinder of claims of five plaintiffs resulting from allegedly defective anti-locking brake system); and *Kehr v. Yamaha Motor Co.*, 596 F.Supp.2d 821 (S.D.N.Y. 2008) (joinder of claims by two plaintiffs arising from roll-over of all-terrain vehicles). Other decisions have disallowed joinder because it was questionable that a discrete common defect was responsible for the plaintiffs' alleged injuries, and/or because the alleged circumstances and injuries varied so greatly that the risk of confusion and prejudice, and the need for individualized discovery, outweighed any benefits to be derived from joinder. *See Boschert v. Pfizer, Inc.*, 2009 WL 138183 (E.D. Mo. 2009) (rejecting joiner of bodily injury claims by four plaintiffs against a drug manufacturer); *Graziose v. American Home Products Corp.*, 202 F.R.D. 638 (D.Nev. 2001) (discussed *infra*).

1    The instant motion to sever concerns the joinder of property damage claims against two

2    independent product manufacturers/suppliers.  Although the Vanguard/Viega and Uponor/Wirsbo

3    Defendants both supplied brass fittings for use in the construction of the Waterfall development,

4    there is no allegation that they engaged in any joint action or had any contractual or business

5    relationship with each other.  Defendants are joined based solely on the alleged common defects in

6    their brass fittings and components which have allegedly caused damage to the Waterfall

7    residences.  The question is whether this is sufficient to satisfy the same transaction or occurrence

8    requirement of Rule 20(a).

9    *Dayton Independent School District v. U.S. Mineral Products Co.*, 1989 WL 237732 (E.D.

10   Tex. 1989) involved claims by several Texas cities, counties and independent school districts

11   against several manufacturers of ceiling and fireproofing materials that contained friable asbestos.

12   In holding that the claims of all plaintiffs against all defendants were properly joined under Rule

13   20(a), the court applied the "logical relationship" test and also relied on the analysis in *Abraham v.*

14   *Volkswagen of America, Inc.*  The court stated:

> Plaintiffs' claims as they apply to all Defendants arise out of the
> manufacture and sale of an allegedly defective and unreasonably
> dangerous product—asbestos-containing ceiling and fireproofing
> material.  Defendants emphasize that because the products were
> purchased, or installed, at different times, by different contractors,
> with different designs by different architects, that joinder of the
> claims is improper.  However, "absolute identity of all events is
> unnecessary."  [*Mosely*, 497 F.2d] at 1333.  Plaintiffs' claims arise
> out of the uniform failure of Defendants' product during conditions of
> normal use.  There simply is no practical difference between the
> claims of each of the Plaintiffs.  The building may have been
> designed by different architects; built by different contractors;
> constructed at different times—and maintained in varying degrees.
> However, it is alleged that each building has friable
> asbestos-containing ceiling materials which release asbestos fibers
> during conditions of normal use and is hazardous and unreasonably
> dangerous to the occupants.
>
> Moreover, Plaintiffs allege that the asbestos-containing ceiling
> material and fireproofing material manufactured by Defendants is
> defective because the binder or matrix breaks down and deteriorates
> over time thereby releasing the invisible asbestos fibers.  This
> "common defect" satisfies the requirements of a series of
> logically-related transactions.  *Abraham v. Volkswagen of America,*
> *Inc.,* 759 F.2d 238 (2nd Cir.1986).

*Id.* 1989 WL 237732, at *2-*3.

9

Defendants, however, rely on *Graziose v. American Home Products Corp.*, 202 F.R.D. 638 (D.Nev. 2001) and *Ramos v. Playtex Products, Inc.*, 2008 WL 4066250 (N.D. Ill. 2008) in which the courts granted motions to sever product defect claims brought against two or more product manufacturers or suppliers.

*Graziose* involved claims by ten individual plaintiffs for bodily injury damages and loss of consortium against ten named and forty unnamed defendants arising "out of the purchase/ingestion of various medicines that allegedly caused varied injuries and damages." 202 F.R.D. at 639. The court noted that "[t]he single thread attempting to tie these claims together is the alleged existence in the various medicines, of a substance known as phenylpropanolamine ("PPA")." *Id.* In holding that the plaintiffs' claims did not arise out of the same transaction or a series of transactions, the court stated that "the potentially common issues of whether PPA is present, and whether it had an effect on the person who took the medication, or was the cause of some adverse reaction" was not sufficiently common to warrant joinder. The court noted that the plaintiffs' claims "involved distinct and varied individual health conditions and histories, as well as different medicines with distinct propensities, which may have contributed to the effects of the individual medicines on individual persons." *Id.* at 640. The court was also persuaded that joinder would significantly increase the cost of defending the case by forcing defendants to participate in discovery or other proceedings that were irrelevant to the claims against each of them. *Id.* at 641.

The plaintiffs in *Ramos v. Playtex Products, Inc.*, 2008 WL 4066250 (N.D. Ill. 2008) sued four manufacturers-distributors of cooler/carrying cases ("cooler carriers") made for the storing of breast milk. The plaintiffs alleged that the vinyl plastic cooler carriers were defective because they contained high levels of lead. The court held that this alleged common defect did not provide a sufficient logical link or relationship to support the joinder of claims against different manufacturers. The court noted that the products were independently manufactured, marketed and distributed by the defendants who had no contractual or other business or relationship to one another.

This case is arguably distinguishable from *Ramos* because Defendants' yellow brass fittings and components were installed in the same residential development project and Defendants are

10

being jointly sued by the Homeowners Association of that development for the damages caused to their members.  There is, thus, a logical relationship between the Defendants and the alleged defects in the Waterfall community.  *Ramos*, however, otherwise supports Defendants' argument that the claims against the Defendants should be severed since there is no allegation of any joint conduct or contractual relationship between them.

Under *Ramos's* interpretation of transaction or occurrence, the decision in *Dayton Independent School District* was also erroneous since there was no indication in that case that the defendants had any relation to each other, except for the fact that their building materials contained friable asbestos.  In this Court's opinion, *Ramos* applies an unreasonably restrictive interpretation of the transaction or occurrence requirement in Rule 20(a).  The construction adopted in *Dayton Independent School District* is more in line with the liberal joinder policy underlying Rule 20(a) and the broad interpretation of "transaction or occurrence" applied by most courts.  So long as the alleged common defect is sufficiently specific, and there is substantial similarity between the defendants' products, joinder of defendants under Rule 20(a) is proper.  Other circumstances, however, may still justify an order granting separate trials or pretrial proceedings notwithstanding an alleged common defect.  *See Graziose, supra.*

Here, the Plaintiffs allege that the Defendants' yellow brass products are defective because they contain substantially the same percentage of zinc which makes them susceptible to corrosion and resulting damage to the potable water systems in the subject residences.  Plaintiffs further allege that Defendants' fittings have failed or will fail during the useful life of the residences and therefore need to be removed and replaced.  The damages allegedly sustained by the individual homeowners, which Plaintiffs seek to recover on a collective basis, are likely to be substantially similar, i.e. the cost of removal and replacement of the allegedly defective fittings and components and/or the reduced market value of the residences.  The damage claims do not appear to vary significantly depending on which Defendant's product is involved.  These factors support the conclusion that Plaintiffs' claims against the Vanguard/Viega and Uponor/Wirsbo Defendants relate to or arise from the same transaction or occurrence, or series of transactions or occurrences and that they should be litigated in a single action.

11

1   Given this conclusion, the second requirement of Rule 20(a) is also satisfied.  There clearly

2   are common issues of fact as to whether yellow brass plumbing fittings containing 35-38% zinc are

3   defective because of their susceptibility to dezincification and corrosion.  There are also common

4   issues of law relating to Defendant's liability for breach of express or implied warranties, strict

5   products liability or negligence based on failure to warn or instruct.

6   Based on the information presently available, severance is not justified on the grounds that

7   joint trials will result in jury confusion or *unfair* prejudice, or that pretrial joinder will result in

8   unnecessary discovery.  The Vanguard/Viega and Uponor/Wirsbo Defendants both presumably

9   dispute the allegations that their products are defective.  Either or both Defendants may be able to

10   demonstrate that the design or construction of their products reasonably prevents corrosion and

11   failure due to "dezincification."  It is not necessarily beyond the ability of jurors to recognize

12   relevant differences between the Defendants' products and arrive at different, but correct, verdicts

13   based on the evidence.  Discovery regarding the design or construction of each Defendant's fittings

14   may be relevant to whether either or both Defendant's fittings are defective.  Thus, even if the

15   claims against Defendants were severed, the Defendants may still find it necessary to participate in

16   discovery regarding the other Defendants' products.  If circumstances develop, however, which

17   create an actual  substantial risk that the jury will be misled or that either Defendant will be unfairly

18   prejudiced, then separate trials can still be ordered pursuant to Rule 20(b) or Rule 42(b).  The Court

19   therefore concludes that severance of the Defendants is not justified at this time.

20   Plaintiffs' counsel have filed a motion before the Judicial Panel on Multidistrict Litigation

21   (MDL) to transfer this action and twelve other actions filed against Uponor/Wirsbo,

22   Vanguard/Viega, and a third "yellow brass" manufacturer-distributor, Rehau, to a United States

23   District located in Las Vegas, Nevada and to consolidate the actions for pretrial proceedings.  *See*

24   *Motion for Transfer of Actions Pursuant to 28 U.S.C. §1407 For Consolidated Pretrial*

25   *Proceedings, Docket #40 in this Action.*  It is conceivable that the MDL Panel may decide that

26   consolidation of multiple similar actions should be done on the basis of claims against the

27   particular manufacturer defendant.  In this regard, ten of the thirteen actions that Plaintiffs seek to

28   consolidate involve only Uponor/Wirsbo products.  Should the MDL Panel grant Plaintiffs' motion,

12

nothing in this order precludes the MDL Panel from transferring only the claims against the Uponor/Wirsbo Defendants and severing Plaintiffs' claims against the Vanguard/Viega Defendants. Absent such action by the MDL Panel, however, sufficient grounds do not exist to justify severance.

### CONCLUSION

Based on the foregoing, the Court concludes that the claims against the Vanguard/Viega and Uponor/Wirsbo Defendants relate to or arise out of the same transaction or occurrence or series of transactions or occurrences and involve common questions of the law and fact. The Defendants have therefore been properly joined under Rule 20(a) of the Federal Rules of Civil Procedure. The Court further concludes that other circumstances do not presently justify the severance of the claims against the Defendants. Accordingly,

**IT IS HEREBY ORDERED** that the Vanguard/Viega Defendants' Joint Motion to Sever Claims against Different Products (#49) and Defendant Centex Homes' Joinder in the Motion to Sever (#54) and the Uponor/Wirsbo Defendants' Joinder in the Motion to Sever (#56) are **denied**.

DATED this 30th day of January, 2012.

GEORGE FOLEY, JR.
United States Magistrate Judge

13