1
2
3
4              **UNITED STATES DISTRICT COURT**
5                   **DISTRICT OF NEVADA**
6
7   WATERFALL HOMEOWNERS                    )
    ASSOCIATION et al.,                      )
                                             )
8                    Plaintiffs,             )
                                             )        2:11-cv-01498-RCJ-GWF
9            vs.                             )
                                             )              **ORDER**
10  VIEGA, INC. et al.,                      )
                                             )
11                   Defendants.             )
    _____      )
12
13          This Rule 23 class action arises out of the installation of allegedly defective high-zinc-

14  content "yellow brass" (high zinc content) plumbing fittings in residences throughout the Las

15  Vegas area.  Several duplicative such class actions have been filed in this District by the same

16  law firms against many of the same defendants, albeit with different named plaintiffs.  Most such

17  actions have been removed from state court, but Plaintiffs filed the present case in this Court.

18  Several motions are pending before the Court.

19  **I.     FACTS AND PROCEDURAL HISTORY**

20          Plaintiffs Waterfall Homeowners Association ("Waterfall") and Red Bluffs at the

21  Crossings Owners Association, Inc. ("Red Bluffs") have filed the present Rule 23 class action.

22  Plaintiffs represent their own 998 members directly but also wish to represent up to 10,000

23  homeowners associations representing up to 250,000 similarly situated homeowner members

24  throughout the Las Vegas area via this class action.  Plaintiffs seek damages pursuant to Chapter

25  40 of the Nevada Revised Statutes ("NRS") based upon damage and potential future damage to

1   class members' homes arising out of the failure or potential future failure of yellow brass

2   plumbing fittings and components manufactured by "Vanguard/Viega" and "Wirsbo/Uponor."

3           Waterfall sent its Chapter 40 notice to all Defendants except Manning on March 24,

4   2011.  On April 20, 2011, the German Viega Defendants responded by denying liability.  On

5   June 22, 2011, Interstate responded by claiming the notice was defective.  On June 24, 2011, the

6   U.S. Viega Defendants responded by claiming the notice was defective and disclaimed any

7   liability.  On June 28, 2011, Centex responded by claiming the notice was defective.

8           Red Bluffs sent its Chapter 40 notice to the Viega Defendants on June 11, 2011.  On July

9   28, 2011, Viega GMBH & Co. KG responded by claiming the notice was defective.

10          Plaintiffs sued Defendants in this Court on September 16, 2011.  Plaintiffs have sued the

11  following Defendants: (1) Viega, Inc.; (2) Viega, LLC; (3) VG Pipe, LLC; (4) Vanguard Piping

12  Systems, Inc.; (5) Vanguard Industries, Inc.; (6) Viega GMBH & Co. KG; (7) Viega

13  International GMBH; (8) Uponor Corp.; (9) Uponor Group; (10); Uponor, Inc.; (11) Wirsbo Co.;

14  (12) Uponor Wirsbo Co.; (13) Centex Homes ("Centex"); (14) Dynamic Plumbing Systems Inc.

15  of Nevada; (15) Interstate Plumbing and Air Conditioning, Inc.; (16) Interstate Plumbing and Air

16  Conditioning, LLC, a.k.a. Interstate Services; and (17) James Manning.  Defendants 1–5 are

17  referred to collectively herein as the "U.S. Viega Defendants."  Defendants 6–7 are referred to

18  collectively herein as the "German Viega Defendants."  Defendants 1–7 are referred to

19  collectively herein as the "Viega Defendants."  Defendants 8–9 are referred to collectively herein

20  as the "Finnish Uponor Defendants."  Defendants 10–12 are referred to collectively herein as the

21  "U.S. Uponor Defendants."  Defendants 8–12 are referred to collectively herein as the "Uponor

22  Defendants."  Many of these Defendants have been sued in identical class actions by the same

23  law firms, but with different named plaintiffs.

24          The Complaint lists ten nominal causes of action: (1) Breach of Implied Warranties; (2)

25  Breach of Express Warranties (Viega Defendants); (3) Breach of Express Warranties (Uponor

1    Defendants); (4) Breach of Express Warranties (all Defendants except Viega and Uponor

2    Defendants); (5) Negligence and Negligent Misrepresentation; (6) Strict Liability; (7)

3    Declaratory and Equitable Relief; (8) Violation of Nevada Deceptive Trade Practices Act (all

4    Defendants except Centex); (9) Alter Ego (Uponor Defendants); and (10) Alter Ego (Viega

5    Defendants).  The nominal fifth cause of action constitutes two separate causes of action.  The

6    nominal seventh cause of action lists two measures of relief but no independent cause of action.

7    The nominal ninth and tenth causes of action are not independent causes of action but legal

8    theories relevant to the other underlying causes of action.  Pending before the Court are three

9    motions to dismiss, a motion to dismiss or consolidate, a motion to strike, a motion to stay, and a

10   motion to review an order of the magistrate judge.

11   **II.    LEGAL STANDARDS**

12       **A.    Rule 8(a)**

13       Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the

14   claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of

15   what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47

16   (1957).  Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action

17   that fails to state a claim upon which relief can be granted.  A motion to dismiss under Rule

18   12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720

19   F.2d 578, 581 (9th Cir. 1983).  When considering a motion to dismiss under Rule 12(b)(6) for

20   failure to state a claim, dismissal is appropriate only when the complaint does not give the

21   defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell*

22   *Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In considering whether the complaint is

23   sufficient to state a claim, the court will take all material allegations as true and construe them in

24   the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th

25   Cir. 1986).  The court, however, is not required to accept as true allegations that are merely

1  conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden*

2  *State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  A formulaic recitation of a cause of action

3  with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation

4  is plausible, not just possible. *Ashcroft v. Iqbal*, 566 U.S. 662, 677–80 (2009) (citing *Twombly*,

5  550 U.S. at 555).

6       "Generally, a district court may not consider any material beyond the pleadings in ruling

7  on a Rule 12(b)(6) motion.  However, material which is properly submitted as part of the

8  complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner*

9  *& Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted).  Similarly, "documents

10  whose contents are alleged in a complaint and whose authenticity no party questions, but which

11  are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6)

12  motion to dismiss" without converting the motion to dismiss into a motion for summary

13  judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).  Moreover, under Federal Rule

14  of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay*

15  *Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986).  Otherwise, if the district court

16  considers materials outside of the pleadings, the motion to dismiss is converted into a motion for

17  summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th

18  Cir. 2001).

19       **B.     Rule 72(a)**

20       Rule 72(a) permits a district court judge to modify or set aside a magistrate judge's non-

21  dispositive ruling that is clearly erroneous or contrary to law:

22       When a pretrial matter not dispositive of a party's claim or defense is referred
        to a magistrate judge to hear and decide, the magistrate judge must promptly conduct
23       the required proceedings and, when appropriate, issue a written order stating the
        decision.  A party may serve and file objections to the order within 14 days after
24       being served with a copy.  A party may not assign as error a defect in the order not
        timely objected to. The district judge in the case must consider timely objections and
25       modify or set aside any part of the order that is clearly erroneous or is contrary to

1       law.

2       Fed. R. Civ. P. 72(a); *see also* Local R. IB 3-1(a).  "Under Rule 72(a), '[a] finding is "clearly

3       erroneous" when, although there is evidence to support it, the reviewing court on the entire

4       evidence is left with the definite and firm conviction that a mistake has been committed.'"

5       *Rafano v. Patchogue-Medford Sch. Dist.*, No. 06-CV-5367 (JFB)(ARL), 2009 WL 789440, at

6       *12 (E.D.N.Y. Mar. 20, 2009) (quoting *Burgie v. Euro Brokers, Inc.*, No. 05 Civ.

7       0968(CPS)(KAM), 2008 U.S. Dist. LEXIS 71386, at *18 (E.D.N.Y. Sept. 5, 2008) (quoting

8       *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602,

9       622 (1993))).  "An order is contrary to law when it fails to apply or misapplies relevant statutes,

10      case law or rules of procedure." *Id.*

11              **C.      NRS Section 40.647**

12              When a construction-defect plaintiff in Nevada has failed to file a notice pursuant to NRS

13      section 40.645 or has failed thereafter to permit an inspection and reasonable opportunity to

14      repair pursuant to NRS section 40.647(1), a court must dismiss the case without prejudice and

15      compel the plaintiff to file such a notice before filing another action. *See* Nev. Rev. Stat. §

16      40.647(2)(a).  Section 40.645 states that a claimant must file a Chapter 40 notice "before a

17      claimant commences an action . . . ." Nev. Rev. Stat. § 40.645(1) (emphasis added).[1]  Named

18      Plaintiffs in this case filed Chapter 40 notices before filing the Complaint.  The question is

19      whether the notices were adequate and whether Plaintiffs complied with the inspection and

20      repair requirements.

21      _____

22              [1]There is an exception to the pre-suit notice requirement for defects that "create[] an
        imminent threat to the health or safety of the inhabitants of the residence," *id.* § 40.670(1), but

23      the allegations in the present case do not implicate this exception.  Plaintiffs allege that at some
        time in the future the pipes in their homes may leak or fail at the joints, causing water damage to

24      their property.  Also, if dismissal would prevent a subsequent action due to the statute of
        limitations, a court must stay a proceeding pending compliance with the notice, inspection, and

25      repair provisions of the statutes, *see id.* § 40.647(2)(b), but Plaintiffs do not argue that this
        subsection is implicated.

1

### D.      Motions to Strike

2       "The court may strike from a pleading an insufficient defense or any redundant,

3  immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

4

### E.      Personal Jurisdiction

5       A defendant may move to dismiss for lack of personal jurisdiction. *See* Fed. R. Civ. P.

6  12(b)(2).  Jurisdiction exists if: (1) provided for by law; and (2) the exercise of jurisdiction

7  comports with due process. *See Greenspun v. Del E. Webb Corp.*, 634 F.2d 1204, 1207 (9th Cir.

8  1980).  When no federal statute governs personal jurisdiction, a federal court applies the law of

9  the forum state. *See Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008).  Where a forum

10 state's long-arm statute provides its courts jurisdiction to the fullest extent of the Due Process

11 Clause of the Fourteenth Amendment, such as Nevada's does, *see Arbella Mut. Ins. Co. v. Eighth*

12 *Judicial Dist. Court*, 134 P.3d 710, 712 (Nev. 2006) (citing Nev. Rev. Stat. § 14.065), a court

13 need only apply federal due process standards, *see Boschetto*, 539 F.3d at 1015.[2]

14      There are two categories of personal jurisdiction: general jurisdiction and specific

15

16      [2]Nevada's long-arm rule restricts extra-territorial jurisdiction to the limits of both the

17 U.S. and Nevada Constitutions. *See* Nev. Rev. Stat. § 14.065(1).  However, Nevada's due
process clause is textually identical to the federal clause in relevant respects, *see* Nev. Const. art.

18 1, § 8(5), and the Nevada Supreme Court reads the state clause as coextensive with the federal
clause, *see, e.g.*, *Wyman v. State*, 217 P.3d 572, 578 (Nev. 2009).  Until 1868, when the

19 Fourteenth Amendment was adopted, the Due Process Clause of the Fifth Amendment did not
apply to the states. *See Barron v. City of Baltimore*, 32 U.S. 243, 250–51 (1833) (Marshall, C.J.).

20 The Declaration of Rights that comprises Article I of the Nevada Constitution, which was
adopted in 1864, was included in order to impose certain restrictions on the State of Nevada that

21 were already imposed against the federal government under the Bill of Rights, and the Nevada
Supreme Court has not interpreted the protections of the Declaration of Rights to exceed the

22 scope of their federal counterparts. Michael W. Bowers, *The Sagebrush State* 43–44 (3rd ed.,
Univ. Nev. Press 2006); Michael W. Bowers, *The Nevada State Constitution* 24 (1993).  During

23 the Nevada Constitutional Convention in 1864, the Due Process Clause of Article I was not
debated, although several other provisions of Article I, and even Section 8, were heavily debated.

24 *See generally* Andrew J. Marsh, Official Report of the Debates and Proceedings of the
Constitutional Convention of the State of Nevada (Frank Eastman pr., 1866), *available at*

25 http://books.google.com.

jurisdiction.  General jurisdiction exists over a defendant who has "substantial" or "continuous and systematic" contacts with the forum state such that the assertion of personal jurisdiction over him is constitutionally fair even where the claims are unrelated to those contacts. *See Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1171 (9th Cir. 2006) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984)).

Even where there is no general jurisdiction over a defendant, specific jurisdiction exists when there are sufficient minimal contacts with the forum such that the assertion of personal jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (quoting *Milliken*, 311 U.S. at 463).  The standard has been restated using different verbiage. *See Hanson v. Denckla*, 357 U.S. 235, 253 (1958) ("[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." (citing *Int'l Shoe Co.*, 326 U.S. at 319)); *World-wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) ("[T]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State.  Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." (citing *Kulko v. Superior Court of Cal.*, 436 U.S. 84, 97–98 (1978))).  From these cases and others, the Ninth Circuit has developed a three-part test for specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

1   *Boschetto*, 539 F.3d at 1016 (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797,

2   802 (9th Cir. 2004)).

> The plaintiff bears the burden on the first two prongs. If the plaintiff establishes both
> prongs one and two, the defendant must come forward with a "compelling case" that
> the exercise of jurisdiction would not be reasonable. But if the plaintiff fails at the
> first step, the jurisdictional inquiry ends and the case must be dismissed.

*Id.* (citations omitted). The third prong is itself a seven-factor balancing test, under which a

court considers:

> (1) the extent of the defendant's purposeful interjection into the forum state's affairs;
> (2) the burden on the defendant of defending in the forum; (3) the extent of conflict
> with the sovereignty of the defendants' state; (4) the forum state's interest in
> adjudicating the dispute; (5) the most efficient judicial resolution of the controversy;
> (6) the importance of the forum to the plaintiff's interest in convenient and effective
> relief; and (7) the existence of an alternative forum.

*Menken v. Emm*, 503 F.3d 1050, 1060 (9th Cir. 2007) (quoting *CE Distrib., LLC v. New Sensor*

*Corp.*, 380 F.3d 107, 1112 (9th Cir. 2004)).

## III. ANALYSIS

### A. Motion to Strike (ECF No. 38)

The Court will treat the U.S. Viega Defendants' motion to strike the class allegations as a

motion to deny class certification and deny it. As Movants note, to obtain class certification,

Plaintiffs must show that every requirement of Rule 23(a) is satisfied and that at least one

disjunctive provision of Rule 23(b) is satisfied. *See, e.g.*, *Zinser v. Accufix Research Inst., Inc.*,

253 F.3d 1180, 1186 (9th Cir. 2001). The Ninth Circuit permits class action defendants to move

preemptively to deny class certification rather than waiting to defend against motions to certify.

*See Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 941 (9th Cir. 2009) ("A defendant

may move to deny class certification before a plaintiff files a motion to certify a class."); *see also*

*Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 210–14 (9th Cir. 1975). District courts have broad

discretion to manage the class certification process, including consideration of preemptive

motions to deny class certification in cases where discovery has not yet closed, so long as

plaintiffs have had "adequate time" to conduct relevant discovery required to defend against the motion. *Vinole*, 571 F.3d at 942.  Although the present motion is labeled as a motion to strike, the Court will treat it as a motion to deny class certification, because that is what the motion requests in substance.

Movants argue that Plaintiffs have alleged only that class certification is proper under Rule 23(b)(1)(A), but that class certification under this subsection of the rule is improper where the primary relief sought is monetary damages.  Movants are correct on the law. *See Zinser*, 253 F.3d at 1193 ("Certification under Rule 23(b)(1)(A) is . . . not appropriate in an action for damages.").  Movants are also correct that the class allegations in the present case rely exclusively on Rule 23(b)(1)(A). *Compare* Compl. ¶ 36, Sept. 16, 2011, ECF No. 1 ("Prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent or varying adjudications with respect to individual members of the class and thus establish incompatible standards of conduct for the parties opposing the class."), *with* Fed. R. Civ. P. 23(b)(1) and (b)(1)(A) ("prosecuting separate actions by or against individual class members would create a risk of . . . inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class").  To the extent the action seeks damages, it cannot be certified under this subsection. *See Zinser*, 253 F.3d at 1193.

Plaintiffs ask for twelve nominal measures of relief. (*See* Compl. 37–38).  The first eight measures of relief sought are various measures of damages, interest, fees, and costs.  Damages is clearly the gravamen of the action.  The next three measures of relief are for declarations.  But such declarations will not result in inconsistent commands with respect to individual class members.  The first declaration Plaintiffs seek is "a declaration of the interpretation, construction, and applicability of NRS Chapter 116 and NRS Chapter 40 as those statutes pertain to the facts and circumstances alleged herein." (*Id.* 38).  The other two requested declarations are

similar.  These are extremely broad requests that really only ask the Court to issue an order

consistent with the statutes.  There is no reason to fear that orders in individual cases would

require inconsistent actions by any Defendants.  It is possible that some courts may rule that

certain Chapter 40 notices are sufficient while other courts rule that substantively identical

Chapter 40 notices are insufficient, for example.  But such a result will not require inconsistent

actions by any Defendant under the meaning of "inconsistent" pertaining to Rule 23(b)(1)(A).  A

Defendant can be made to act differently with respect to different class members without being

ordered to act inconsistently.  "Inconsistent" means that a Defendant cannot possibly comply

with two orders simultaneously.  For example, in an appropriate set of cases, two different courts

might order a manufacturer defendant to attach conflicting warnings to all sales of an allegedly

defective product.  Or two different courts might order a factory to divert its waste flow in

inconsistent ways.  Here, the only risk of "inconsistency" is that some courts may rule in favor of

certain plaintiffs, while other courts may rule against other plaintiffs.  Defendants will be able to

comply with such orders simultaneously.  And the preclusion doctrines will prevent any

conflicting money judgments as between the same parties.  Finally, Plaintiffs seek "such further,

declaratory, equitable, or other relief . . . ."  This boilerplate language does not create any serious

risk of incompatible standards of conduct upon Defendants if cases are separately prosecuted.

Plaintiffs ask not for Defendants to be made to repair the alleged defects—such that multiple

courts might compel inconsistent standards of conduct with respect to such repairs, i.e., multiple

commands of specific performance that are impossible to comply with simultaneously— but

rather to pay for the costs of the damages or potential future damages so that the class members

may have the defective piece repaired or replaced themselves (or retain the difference in value

without repairing or replacing the defective parts).

In response, Plaintiffs argue that they intend to argue for class certification under Rule

23(b)(3) and that they only meant to plead Rule 23(b)(1)(A) in the alternative.  The Complaint

clearly does not include any allegation corresponding to Rule 23(b)(3), but Plaintiffs will be given leave to amend to include such allegations.  It seems possible that Plaintiffs could obtain certification under Rule 23(b)(3) under the present circumstances, although there will be a very difficult hurdle for Plaintiffs to leap in showing that common issues predominate, because they seek to represent thousands of associations, each of which must send its own Chapter 40 notice.  The individual facts of whether particular associations complied with Chapter 40 notice, inspection, and opportunity-to-repair requirements are likely to overwhelm the common issues of law.  The Court will leave this issue to later motion practice, however.  Movants have not asked the Court to deny class certification on this basis, and Plaintiffs have not yet moved for class certification at all.

In summary, the Court will treat the motion as a motion to deny class certification and deny it.  Movants also argue that Rule 23(a) has not been satisfied, but it is in fact likely that the Rule 23(a) requirements of numerosity, typicality, commonality, and adequate representation are satisfied.  Plaintiffs allege thousands of homeowners (represented by thousands of associations) all suffering the same precise defects in their plumbing components as the class representatives have suffered, because of the manufacture and installation of defective components by the same companies.  Plaintiffs also argue that the Chapter 40 notices were insufficient, but this argument is best left to the separate motions to dismiss and is not appropriate in the present motion to deny class certification.

**B.      Motions to Dismiss (ECF Nos. 37, 41, 42, 80)**

**1.      Motion No. 37**

The U.S. Viega Defendants move to dismiss as against them.  Movants correctly note that the seventh cause of action for declaratory relief is duplicative of relief sought elsewhere under substantive causes of action and that the claims for alter ego are not independent causes of action.

1    Next, movants argue that Plaintiffs have no associational standing to pursue the claims of

2    the homeowners they purport to represent.  Movants concede that under Nevada law a

3    homeowner's association has standing to represent its members in construction defect cases

4    under Chapter 40, including claims affecting only individual units.  *See D.R. Horton, Inc. v.*

5    *Eighth Judicial Dist. Court*, 215 P.3d 697, 702–03 (Nev. 2009) (citing Nev. Rev. Stat. §

6    116.3102(1)(d)).  Movants argue, however, that the relevant state statute permitting such

7    representation does not guarantee associational standing under Article III.  The Supreme Court

8    has noted that an organization may have standing to sue on behalf of its members when "(a) its

9    members would otherwise have standing to sue in their own right; (b) the interests it seeks to

10   protect are germane to the organization's purpose; and (c) neither the claim asserted nor the

11   relief requested requires the participation of individual members in the lawsuit." *See Hunt v.*

12   *Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977).  Movants argue that the third

13   requirement is not satisfied because the individual homeowners will have to participate in the

14   suit.  *See United Union of Roofers, Waterproofers & Allied Trades No. 40 v. Ins. Corp. of Am.*,

15   919 F.2d 1398, 1400 (9th Cir. 1990) ("The courts that have addressed this issue have

16   consistently held that claims for monetary relief necessarily involve individualized proof and

17   thus the individual participation of association members, thereby running afoul of the third prong

18   of the *Hunt* test.").  The court noted that associational standing was permitted under federal law

19   only when the relief sought was declaratory or injunctive. *See id.* (citing *Alaska Fish & Wildlife*

20   *Federation & Outdoor Council, Inc. v. Dunkle*, 829 F.2d 933 (9th Cir. 1987)).  The court then

21   went on to examine whether California or federal law controlled the associational standing issue,

22   noting that if federal law controlled, "it is clear that individual Union members will have to

23   participate at the proof of damages stage.  There is no escaping the fact that the Union in this

24   case cannot overcome the third hurdle placed before it by Supreme Court precedent." *Id.*  The

25   court then noted that there would not have been associational standing in that case even if

1  California law controlled, so it affirmed the district court's dismissal without determining

2  whether California or federal law applied. *See id.* at 1400–02.

3       Here, under federal law, there is no associational standing.  Homeowners could assign

4  their claims to an association outright, obviating the representational standing issue, but that does

5  not appear to be the case here.  Rather, the associations themselves claim standing based upon a

6  state statute permitting them to bring Chapter 40 actions on homeowners' behalf.  The question

7  therefore, is whether state or federal law controls the associational standing issue.  The Court

8  finds that federal law controls.  Although this is a class action based upon state law claims, and

9  substantive state law therefore controls the causes of action, standing in federal courts is a matter

10  of constitutional dimension.  Federal courts simply do not have jurisdiction to rule where there is

11  no Article III standing.  State law providing for standing in particular circumstances cannot

12  displace a federal constitutional requirement.  It is difficult to see how the Court can escape the

13  fact that the third *Hunt* requirement is not satisfied in this case.  The individual homeowners will

14  be required to participate in the lawsuit by providing opportunities to inspect and repair, if those

15  provisions have not yet been complied with, and at a minimum for the purpose of calculating

16  damages.  Although a Nevada state court might have jurisdiction to entertain the present lawsuit

17  under state standing rules, and although this Court would have jurisdiction to entertain a similar

18  lawsuit where individual homeowners, as opposed to homeowner's associations, were the named

19  Plaintiffs and putative class members—there are in fact several such lawsuits pending in this

20  Court, and Plaintiffs' argument that a class action here would be impossible if there were no

21  associational standing is therefore incorrect—there is no jurisdiction in federal court over the

22  present case, where homeowner's associations seek to represent their members in an action for

23  damages.  The Court will not dismiss for lack of associational standing, however, but will

24  require individual Plaintiffs to be substituted as named Plaintiffs and the class allegations

25  amended to note that individual homeowners are the putative class members, not associations,

1  except insofar as an association wishes to vindicate its own claim based upon property to which

2  the association itself holds title.

3      Next, movants argue that Plaintiffs have no Article III standing because they allege no

4  injury in fact.  Movants argue that Plaintiffs simply allege damage on information and belief

5  without alleging actual damage.  But Plaintiffs have alleged actual damage.  They have alleged

6  that the parts are defective and have already begun to corrode in at least a few sample

7  circumstances, even if they have not yet failed.

8      Next, movants argue that the Complaint lumps many Defendants together without

9  making particular claims against them.  But it is clear from the Complaint which Defendants are

10  alleged to have manufactured and sold which brands of allegedly defective products, and which

11  Defendants are alleged to have installed them.

12      Next, movants argue that Plaintiffs have not alleged facts showing that they are a party to

13  any warranty with any Viega Defendant.  Movants are correct that there is no allegation that any

14  representation of fact, promise, description of goods, sample, or model by Defendants was made

15  a basis for the benefit of the bargain as required under NRS section 104.2313 for an express

16  warranty.  Plaintiffs allege only that Defendants prepared, distributed, and provided express

17  warranties based upon a presumption that certain representations were made via unspecified

18  products, catalogues, etc.  Plaintiffs have not sufficiently identified any breach of an express

19  warranty but will be given leave to amend.

20      Next, movants argue that only Vanguard Piping Systems, Inc., an entity that has merged

21  into another Defendant, made any written warranty, so there are no warranty claims against the

22  other Viega Defendants.  The Court rejects this argument.  The company into which the

23  warrantor merged is likely liable under the warranty, as may be any alter ego or parent company.

24      Next, movants argue that the defunct entity Vanguard Piping Systems, Inc. expressly

25  disclaimed any other express or implied warranties in its express warranty.  The Court will not

1 dismiss the implied warranty claims for this reason.  Plaintiffs have sufficiently pled the

2 existence of implied warranties.

3      Next, movants argue that the implied warranty of habitability applies only to builders,

4 and not to component manufacturers such as movants.  But the Nevada Supreme Court has ruled

5 that in some circumstances a vendor and a builder may be joint venturers such that the vendor

6 may be liable for violating an implied warranty of habitability if it jointly agreed to build a house

7 for sale. *See Radaker v. Scott*, 855 P.2d 1037 (Nev. 1993).  Though unlikely that Plaintiffs can

8 prove that vendor Defendants had such a joint role with any builders in this case, the Court will

9 not determine the question on a motion to dismiss.

10      Next, movants argue that Plaintiffs allege no breach of the implied warranty of

11 merchantability, because they claim no unmerchantability of the homes.  Movants argue that as

12 in automotive defects cases where a car is not "unmerchantable" when an owner uses it despite a

13 defect, the homes here are not "unmerchantable" because the owners reside in them despite the

14 alleged defects.  There are two primary ways in which the word "unmerchantable" arises in the

15 law.  First, "goods" are "unmerchantable" under the Uniform Commercial Code ("UCC") if they

16 are not fit for the particular purpose for which they are designed. *See* Nev. Rev. Stat. § 104.2314.

17 But realty does not constitute "goods." *See id.* § 104.2105.  And Plaintiffs do not allege that they

18 wish to sell their plumbing fittings but cannot because of the defects.  Second, title to property is

19 said to be "unmerchantable" if it is encumbered by interests of persons other than the prospective

20 grantor or there is doubt as to the prospective grantor's title.  Plaintiffs here allege no such

21 encumbrances or defects in their titles.  The Court will therefore grant the motion as to the

22 implied warranty of merchantability.

23      Next, movants argue that the express warranty claims should be dismissed because

24 Plaintiffs did not comply with the Chapter 40 notice, inspection, and opportunity-to-cure

25 requirements, which should be read as incorporated into the UCC's requirement of an

1    opportunity to cure.  However, Plaintiffs do not bring any claims under the UCC.  The Court will

2    not dismiss for this reason.

3            Next, movants argue that a strict liability claim based upon alleged defects in homes or

4    components is not viable under Nevada law.  A building itself is not a "product" for the purposes

5    of strict liability in Nevada. *See Calloway v. City of Reno*, 993 P.2d 1259, 1272 (Nev. 2000).

6            [W]hen a heating and plumbing system damages the building as a whole, the
             building has injured itself and only economic losses have occurred.

7

8            . . . .

9            The damage caused by the allegedly defective framing therefore constituted
             damage to the structures themselves—no "other" property damage resulted, and
             appellants suffered purely economic losses.  Because of the alleged construction
10           defects appellants failed to receive the benefit of their bargains; the defects resulted
             in a lower standard of quality than that expected.  Such inferior workmanship, which
11           leads to building deterioration, is not properly addressed by tort law.  In such
             circumstances, the overriding policy of tort law, to promote safety, is not implicated.
12           We therefore discern no reason to impose, in tort law, a general societal duty to
             prevent such economic losses.

13

14   *Id.* at 1268–69 (citation omitted).  *Calloway* has been overruled in light of Chapter 40 to the

15   extent it held that a negligence claim is not viable in a construction defect case, *see Olson v.*

16   *Richard*, 89 P.3d 31, 33 (Nev. 2004), but *Calloway*'s holding that strict liability is not available

17   based upon property damage to the building itself due to a defective component of the building

18   itself has not been overruled.  The Court will therefore dismiss the strict liability claims, without

19   leave to amend.

20           Next, movants argue that Plaintiffs have not pled negligence or negligent

21   misrepresentation under Rules 8(a) and 9(b).  Movants argue that because they did not select or

22   install plumbing systems, they cannot be held negligent under the "sub-causes of action" for

23   negligent selection and installation.  The Court grants the motion in this regard.  A products

24   negligence action against a manufacturer is presumably viable, however, based upon the

25   manufacturer's negligence in producing the item.  Movants argue that Plaintiffs have not pled

1   negligent misrepresentation with particularity.  They are correct that Plaintiffs allege

2   misrepresentations without identifying them with the specificity required by Rule 9(n), alleging

3   only that certain unspecified misrepresentations were made.  The Court dismisses this claim with

4   leave to amend.

5          Next, movants argue that Plaintiffs have not sufficiently pled negligence per se.  The

6   Court notes that negligence per se is a legal theory attendant to a negligence claim and not a

7   separate cause of action.  The negligence per se issue may be determined on summary judgment

8   or at trial, but it is not a separate cause of action that must be pled.

9          Next, movants argue that Plaintiffs make no allegations concerning a duty to warn.

10  Movants are correct.  The Court dismisses the duty to warn claim, with leave to amend.

11         Next, movants argue that Plaintiffs have not pled a Deceptive Trade Practices Act

12  violation sufficiently or with particularity.  Movants argue that Plaintiffs plead no fraudulent act

13  or representation to any named Plaintiff.  Movants are correct that the language under the eighth

14  cause of action merely recites the statutes without identifying facts making a violation plausible.

15  The Court dismisses this claim, with leave to amend.

16         **2.     Motion No. 41**

17         Centex moves to dismiss Waterfall (but not Red Bluff) for failure to comply with Chapter

18  40's notice, inspection, and opportunity-to-repair requirements.  As noted, *supra*, the Chapter 40

19  notice was served before Plaintiffs filed suit.  Centex challenges the sufficiency of the notice and

20  whether Waterfall gave it a reasonable opportunity to inspect and repair.  The Court denies the

21  motion.  The questions at issue are fact-intensive and should not be resolved on a motion to

22  dismiss where adverse dispositive facts are not evident on the face of the Complaint and are not

23  otherwise admitted.  In any case, Centex's argument that the notice was insufficient largely relies

24  on its confusing argument that an HOA itself cannot make a mass Chapter 40 notice, but only a

25  representative of an HOA, as if a corporate entity like an HOA could act except through a

1 representative.  It also notes that Waterfall cannot represent an entire class.  But Waterfall can

2 represent its own members for the purposes of a Chapter 40 notice.

3          In summary, an association like Waterfall may file a Chapter 40 notice on behalf of its

4 members, but the substantive sufficiency of the notice, as well as the sufficiency of the

5 opportunity Waterfall gave Centex to inspect and repair, is a matter for summary judgment.

6 Finally, the distinction movant draws between adjoined homes and separated homes does not

7 appear to be relevant under Chapter 40, so long as the units are part of a homeowners'

8 association.

9          **3.      Motion No. 42**

10          The U.S. Uponor Defendants move to dismiss for violation of the anti-claim-splitting

11 rule, or alternatively, to consolidate the present case into *Slaughter v. Uponor*, No. 2:08-cv-

12 01223.  A suit is duplicative and should be dismissed for improper claim splitting if an earlier

13 suit by the same plaintiff against the same defendant for the same claim is already pending such

14 that the eventual adjudication of the previous suit would preclude the claim in the later-filed suit.

15 *See Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684, 688–89 (9th Cir. 2007).  Movants argue

16 that the rule should apply where the same law firms bring a duplicative class action on behalf of

17 the same class and against the same defendants, albeit with different named plaintiffs.

18          The Court rules that the *Adams* anti-claim-splitting rationale applies in the present

19 context, at least as against the Uponor Defendants.  In such cases, a defendant is forced to defend

20 duplicative class actions simultaneously.  Plaintiffs may pursue their claims here individually

21 (though they may not then join a class in a case with duplicative claims), but they may not make

22 Defendants defend a duplicative class action, at least not in the way they have done so here.

23 Although two groups of attorneys may bring duplicative class actions with different named

24 plaintiffs in a race towards certification, here, the same group of attorneys has brought the

25 duplicative actions, obviating the concerns in the contrary example where different named

1  plaintiffs and their attorneys are competing for bonuses and attorney's fees, respectively, via the

2  race to certification.  Plaintiffs' attorneys are of course not adverse to themselves, and insofar as

3  they might argue that their different sets of named plaintiffs have adverse interests in separately

4  prosecuting the duplicative actions because they are competing for class representative bonuses,

5  it is the attorneys themselves who have (potentially unethically) created this direct conflict of

6  interests between their own clients in the present matter.

7       In an appropriate case, the class of plaintiffs could be narrowly defined to include only

8  those homeowners in certain developments, such that multiple class actions against the same

9  defendants but by different groups of homeowners would not necessarily violate the anti-claim-

10 splitting rule.  But here, as in the other related cases, the class is very broadly defined to include

11 every yellow-brass-aggrieved homeowner in southern Nevada.  The *Slaughter* and *Fulton Park*

12 cases preclude the present class action as against Uponor Defendants.  The Court will therefore

13 grant the motion to dismiss Uponor Defendants.

14       **4.     Motion No. 80**

15       The German Viega Defendants have moved to dismiss for lack of personal jurisdiction.

16 They argue that there is no general jurisdiction over them in Nevada because they have no

17 property, employees, accounts, advertisements, etc. in Nevada and have not sold any products in

18 Nevada.  They argue that there is no specific jurisdiction over them in Nevada because they did

19 not manufacture, design, sell, etc., the yellow brass products installed in the Waterfall and Red

20 Bluffs developments.  They also argue that the they did not even own the U.S. Viega Defendants

21 (who allegedly manufactured and/or sold the yellow brass fittings) until October 2005 when the

22 Waterfall and Red Bluff developments were nearly completed.  They note that Viega

23 International GmbH (a German Viega Defendant) was the sole shareholder of Viega, Inc. (a U.S.

24 Viega Defendant) until January 2012, but that Viega, Inc. did not become the sole shareholder of

25 Vanguard Industries, Inc. (a U.S. Viega Defendant) until October 2005.  The German Viega

1    Defendants note that the Waterfall property was built between 2004 and 2007, and that the Red

2    Bluffs property was built between 2003 and 2005.

3    The first dispositive question, then, appears to be whether the German Viega Defendants

4    purchased the U.S. Viega Defendants before any of the allegedly defective yellow brass

5    components are alleged to have been manufactured and sold.  The wrong potentially giving rise

6    to specific jurisdiction over the German Viega Defendants in Nevada is the manufacture and sale

7    of allegedly defective yellow brass plumbing fittings.  If the subsidiary companies produced and

8    sold those parts before the parent company purchased or otherwise controlled the subsidiary,

9    there is no specific jurisdiction over the parent company in Nevada based upon the subsidiaries'

10   previous independent tortious acts directed toward Nevada.  Even if the Court assumes movants'

11   claims are true, however, it does not necessarily mean there is no personal jurisdiction over

12   movants.  At least Waterfall, and perhaps Red Bluff, was still under construction when Viega,

13   Inc. became the sole shareholder of Vanguard Industries, Inc., which was the sole shareholder of

14   Vanguard Piping Systems, Inc.  As the Court ruled with respect to the Finnish Uponor

15   Defendants in *Slaughter*, there is agency jurisdiction over these foreign companies. (*See* Order,

16   Nov. 19, 2009, ECF No. 259 in Case No. 2:08-cv-01223 (quoting *Bauman v. DaimlerChrysler*

17   *Corp.*, 579 F.3d 1088, 1094–95 (9th Cir. 2009))).  The maintenance of corporate formalities does

18   not overshadow the fact that this is a group of companies engaged in a common enterprise.  The

19   Court denies the motion to dismiss for lack of personal jurisdiction.

20   **C.    Motion to Stay (ECF No. 78)**

21   Defendant Uponor Corp. asked the Court on February 3, 2012 to stay the time for its

22   responsive pleading until fourteen days after the issuance of the mandate in the *Slaughter* appeal,

23   fourteen days after the issuance of the mandate in Nevada Supreme Court Case No. 59673, or

24   twenty-one days after the original deadline, whichever is later.

25   First, the Court of Appeals issued its mandate in the *Slaughter* case on May 3, 2012.

1  Fourteen days from that date is May 17, 2012, which has passed.

2          Second, the Nevada Supreme Court case is a November 17, 2011 petition for a writ of

3  mandamus by Uponor Corp. asking the Court to direct the Eighth Judicial District Court to

4  reverse its ruling that it had personal jurisdiction over Uponor Corp. based upon Uponor Corp.'s

5  control over Uponor, Inc.  The briefing has been complete since late April, but the case does not

6  appear to have been set for oral argument.  The Court rules that the Nevada Supreme Court's

7  ruling will be inapposite to the present case.  Personal jurisdiction is based upon federal law, and

8  this Court has already ruled in the *Slaughter* case that the Nevada courts have personal

9  jurisdiction over Uponor Corp. based upon allegations substantially identical to those in the

10  present case. (*See* Order, Nov. 19, 2009, ECF No. 259 in Case No. 2:08-cv-01223).

11          Third, Uponor Corp. was served in Helsinki, Finland on January 19, 2012. (*See* Cert. of

12  Service, Jan. 19, 2012, ECF No. 76).  The date to answer was therefore February 9, 2012. *See*

13  Fed. R. Civ. P. 12(a)(1)(A)(i).  A twenty-one day extension would bring the deadline to March 2,

14  2012, which has passed.

15          The Court denies the motion.  Under the first and third alternative requests, the requested

16  deadlines have already passed, making the motion moot in that regard.  The requested deadline

17  under the second request has not passed, but the decision of the Nevada Supreme Court in that

18  case is inapposite and will not affect this Court's assertion of personal jurisdiction over Uponor

19  Corp.

20          **D.      Motion to Review Magistrate Judge's Order (ECF No. 85)**

21          The U.S. Viega Defendants ask the Court to reverse the magistrate judge's decision to

22  deny their motion to sever, which had also been joined by the U.S. Uponor Defendants and

23  Centex.  Movants asked the Court to sever the claims against the U.S. Viega Defendants because

24  the claims against them"do not arise from the same 'transaction or occurrence' or present

25  meaningful questions of law and fact common with the claims relating to the various products of

1   the other defendants."  Movants argued that Viega Defendants manufactured and sold different
2   products than the Uponor Defendants sold, and so the claims were improperly joined.  They
3   argued that the fact that the products (plumbing fittings) were similar and that the alleged defects
4   (dezincification of yellow brass causing leaks and failures) were similar, that the standard for
5   joinder under Rule 20(a)(2) was not satisfied.

6          Rule 20(a)(2) permits the joinder of defendants in a single action if any claim is asserted
7   against them jointly, severally, or in the alternative arising out of the same transaction or
8   occurrence or series of transactions or occurrences, and if any question of law or fact in common
9   to all defendants will arise in the transaction. Fed. R. Civ. P. 20(a)(2)(A)–(B).  Under Rule 21, a
10  court may sever misjoined parties. *See* Fed. R. Civ. P. 21.

11         Movants argue that joinder of defendants is not appropriate in the present products
12  liability/construction defect case simply because multiple defendants have manufactured and
13  sold the same kind of component with the same kind of alleged defect.  In such cases, they argue,
14  there is no common transaction or occurrence or series of transactions or occurrences.  The
15  Viega products and the Uponor products are not identical metallurgically or in design and were
16  manufactured according to different industry standards.  They are simply alleged to have a
17  common kind of defect.  Movants argue that joining Defendants because of the common kind of
18  defect, when the designs are different, may cause jury confusion.  Moreover, Plaintiffs have not
19  alleged that the Viega Defendants acted jointly with the Uponor Defendants, or that the Viega
20  and Uponor Defendants are liable in the alternative.  Rather, they allege that Viega Defendants
21  are liable for harm caused by defective components installed in Vanguard homes, and that
22  Uponor Defendants are liable for harm caused by defective components installed in Wirsbo
23  homes.  The two sets of Defendants should therefore, Movants argue, be severed, because the
24  allegation that all the harm arises out of similar components is not sufficient to permit joinder of
25  Defendants under Rule 20(a)(2).  Movants note that the judicial Panel on Multidistrict Litigation

1  ("JPML") has severed three yellow brass cases based upon the identity of the allegedly defective

2  product.

3      The magistrate judge disagreed and denied the motion to sever.  The magistrate judge

4  noted that "Rule 20 'is to be construed liberally in order to promote trial convenience and to

5  expedite the final determination of disputes, thereby preventing multiple lawsuits.'" *League to*

6  *Save Lake Tahoe v. Tahoe Reg'l Planning Agency*, 558 F.2d 914, 917 (9th Cir. 1977) (quoting

7  *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330 (8th Cir. 1974)).  The magistrate judge noted that

8  under *Mosley*, the Eighth Circuit follows a "logically related" test, and that the Ninth Circuit had

9  cited *Mosley* in approval.  Because the claims against the Viega Defendants were at least

10  logically related to the claims against the Uponor Defendants—the Court agrees—the magistrate

11  judge denied the motion to sever.

12      The magistrate judge rejected Defendants' argument that the Court of Appeals had

13  adopted a stricter standard than the Eighth Circuit's "logically related" test in *Coughlin v.*

14  *Rogers*, 130 F.3d 1348 (9th Cir. 1997).  In *Coughlin*, the Court of Appeals affirmed a district

15  court's decision to sever.  Defendants argued that the Court of Appeals based that holding upon a

16  reading of Rule 20 that mere similarity of claims was insufficient for joinder of Defendants

17  where there was no actual common transaction or series of transactions.  In *Coughlin*, the district

18  court had severed multiple plaintiffs because:

19          the mere allegation of general delay [in processing immigration-related petitions] is
            not enough to create a common transaction or occurrence.  Each Plaintiff has waited
20          a different length of time, suffering a different duration of alleged delay.
            Furthermore, the delay is disputed in some instances and varies from case to case.
21          And, most importantly, there may be numerous reasons for the alleged delay.
            Therefore, the existence of a common allegation of delay, in and of itself, does not
22          suffice to create a common transaction or occurrence.

23  *Id.* at 1350.  The Court of Appeals affirmed, because:

24          These findings, and the district court's order granting severance, square with Federal
            Rules of Civil Procedure 20 and 21 and the precedent on severance. *See, e.g.*, *Saval*,
25          710 F.2d at 1031–32 (rejecting argument that allegations of fraud and common

warranties satisfies the first prong of the joinder test); *Harris v. Spellman*, 150 F.R.D. 130, 132 (N.D. Ill. 1993); *Papagiannis v. Pontikis*, 108 F.R.D. 177, 178–79 (N.D. Ill. 1985) (joinder of plaintiffs not proper even though nature of defendant's alleged misrepresentation to each plaintiff was similar and each plaintiff claimed violation of the same federal law); *Heath v. Bell*, 448 F. Supp. 416, 418 (M.D. Pa. 1977) (joinder of federal inmates alleging that the United States Parole Commission was applying its guidelines unlawfully not proper because "the mere fact that a parole decision is involved is not enough of a connection to satisfy the same transaction requirement").

*Id.* at 1351–52. This case appears to support Movants' argument. The Court of Appeals appears in *Coughlin* to have opined that similar harm is not sufficient to join plaintiffs in a single lawsuit under Rule 20 where the plaintiffs' cases share a "fact pattern" but no facts.[3] Presumably, the same standard applies to the joinder of defendants, because Rules 20(a)(1) and 20(a)(2) use parallel language. Of course, the joinder of plaintiffs under Rule 20 is not an issue in Rule 23 actions because Rule 23 implicitly displaces Rule 20 as to the joinder of Plaintiffs, but nothing in Rule 23 appears to obviate the Rule 20 standards for joining defendants.

The magistrate judge also cited to a case where joinder was held appropriate on appeal because all plaintiffs had alleged a defect in the same product made by the same manufacturer, despite the fact that the defect manifested itself in slightly different ways from plaintiff-to-plaintiff. *See Abraham v. Volkswagon of Am., Inc.*, 795 F.2d 238, 240, 251 (2d Cir. 1986) (citing 7 Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1653 (1972)). The magistrate judge wrote that "[d]istrict court decisions have relied on *Abraham* in upholding the joinder of product liability claims against a manufacturer or distributor, even though the individual plaintiffs' injuries and damages resulting from the alleged defect may differ." But that is not all Plaintiffs seek to do here. Plaintiffs seek to join not only similar, though slightly varying, harms arising out of the defects of a single manufacturer's product, as in *Abraham*.

---

[3]*Coughlin* referred to *Mosley* only in citing the standard of review pertaining to Rule 21 motions. *See id.* at 1351. It did not, as the magistrate judge wrote, approve of the "logical relation" standard of *Mosley*, but appears to have rejected it in substance without invoking it by name.

1  Rather, they seek to join two different manufacturers with two different products who have no

2  apparent contractual, agency, or other relationship.  The precedents would support the joinder of

3  *Plaintiffs* against either the Viega Defendants or the Uponor Defendants—although this question

4  is obviated by a Rule 23 action—but the precedents do no support the joinder of all such

5  Plaintiffs against both sets of *Defendants*.

6        Next, the magistrate judge relied in part on a pre-2007 unpublished district court case

7  from another district, which case may not be cited in this Circuit.  *See* Ninth Cir. R. 36-3(c).

8  Finally, the magistrate judge disagreed with the district court's severance of defendants in

9  *Graziose v. Am. Home Prods. Corp.*, 202 F.R.D. 638 (D. Nev. 2001) (Hunt, J.).  In that case, ten

10  plaintiffs sued ten defendants for harm allegedly caused by an ingredient in certain medicines the

11  defendants had manufactured. *See id.* at 639.  Judge Hunt granted a motion to sever plaintiffs

12  based upon *Coughlin*. *See id.* at 640 ("The purchases/ingestions of the medications in question

13  clearly did not arise out of the same transaction or a series of transactions.  They occurred at

14  different times. *The medicines were different.  The retailers were different.  The manufacturers*

15  *are different.*" (emphasis added)).  "The only concrete similarity among the various Plaintiffs are

16  that they (or their spouse[s]) took a medicine containing PPA as an active ingredient, and they

17  allegedly suffered an injury.  This is insufficient to justify joinder of these Plaintiffs and their

18  claims." *Id.*  The present case is analogous to *Graziose*.  The only concrete similarity among the

19  Viega and Uponor Defendants is that they manufactured and sold components containing yellow

20  brass, and Plaintiffs allegedly suffered injuries.  The components and precise metallurgical

21  compositions were different.  The retailers were different.  The manufacturers are different.  This

22  is insufficient to justify joinder of these Defendants.  In summary, the Court rules that the

23  magistrate judge erred in denying severance to the Viega Defendants.  However, because the

24  Court dismisses the Uponor Defendants under the anti-claim-splitting rule, the present motion

25  will be denied as moot.

1    **IV.    THE DISTRICT OF MINNESOTA MDL ORDER**

2           Plaintiffs in a related case have filed a motion asking the Court to stay the case based

3    upon an order (the "Order") by the U.S. District Court for the District of Minnesota (the

4    "Minnesota Court" or "MDL Court") enjoining and staying all actions involving Uponor F1807

5    yellow brass fittings.  The Order was entered on January 19, 2012 and is attached at Exhibit 1 to

6    Motion No. 54 in Case No. 2:11-cv-1424.  The MDL Court approved a settlement, subject to a

7    final fairness hearing after an opt-out notice procedure.  The MDL Court approved two

8    settlement classes, one for those whose F1807 systems have already leaked, and one for those

9    whose F1807 systems haven't yet leaked.  The settlement classes include all persons in the

10   United States that own or have owned structures that contain or have ever contained ASTM

11   F1807 style plumbing systems manufactured or sold by Radiant Technology, Inc. or Uponor,

12   Inc. (and their predecessors) installed on or after May 15, 1999. (*See* Order 3–4, Jan. 19, 2012,

13   ECF No. 54, Ex. 1, in Case No. 2:11-cv-1424).  The MDL Court ordered:

14          that any actions or proceedings pending in any court in the United States involving
            an RTI F1807 System, except any matters necessary to [the] implement[ation],
15          advance[ment], or further approval of the Agreement of settlement process, are
            stayed pending the Final Fairness Hearing and the issuance of a Final Order and
16          Judgment.

17   (*Id.* 18; *see id.* 22).  The MDL Court also enjoined class members from filing or otherwise

18   participating in any proceedings in any jurisdiction relating to the RTI F1807 system. (*See id.* 18,

19   22–23).  The final fairness hearing has been scheduled for June 26, 2012. (*See id.* 23).

20          At oral argument on the present motions, Plaintiffs disclaimed any claims based upon

21   F1807 components or systems as identified by the MDL Court.  The Court therefore need not

22   stay the present action in full or in part at this time.

23                                        **CONCLUSION**

24          IT IS HEREBY ORDERED that the Motion to Strike (ECF No. 38) is DENIED as a

25   motion to deny class certification.  However, Plaintiffs must amend the Complaint to include

1    class allegations corresponding to Rule 23(b)(3).

2         IT IS FURTHER ORDERED that the Motion to Dismiss (ECF No. 37) is GRANTED in

3    part and DENIED in part.  The Court dismisses part of the first cause of action for breach of the

4    implied warranty of merchantability, with leave to amend; dismisses the second cause of action

5    for breach of express warranty, with leave to amend; dismisses part of the fifth cause of action

6    for negligent selection and installation, without leave to amend; dismisses part of the fifth cause

7    of action for negligent misrepresentation and failure to warn, with leave to amend; dismisses the

8    sixth cause of action for strict liability, without leave to amend; and dismisses the eighth cause of

9    action for violation of Nevada's Deceptive Trade Practices Act, with leave to amend.  The

10    seventh, ninth, and tenth causes of action are not independently actionable causes of action.

11    Finally, Plaintiffs must join individual homeowners as named Plaintiffs.

12         IT IS FURTHER ORDERED that the Motion to Dismiss (ECF No. 41) is DENIED.

13         IT IS FURTHER ORDERED that the Motion to Dismiss or Consolidate (ECF No. 42) is

14    GRANTED in part and DENIED in part.  The Court dismisses as against the Uponor Defendants

15    for improper claim splitting and denies the motion to consolidate the case with the

16    *Slaughter* case.

17         IT IS FURTHER ORDERED that the Motion to Stay (ECF No. 78) is DENIED.

18         IT IS FURTHER ORDERED that the Motion to Dismiss (ECF No. 80) is DENIED.

19         IT IS FURTHER ORDERED that the Motion to Review Magistrate Judge's Order (ECF

20    No. 85) is DENIED as moot.

21         IT IS SO ORDERED.

22    Dated this 9th day of July, 2012.

23    _____

24    ROBERT C. JONES
        United States District Judge

25