UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| WATERFALL HOMEOWNERS ASSOCIATION et al., | ) ) ) | |
| Plaintiffs, | ) ) | 2:11-cv-01498-RCJ-GWF |
| vs. | ) ) | **ORDER** |
| VIEGA, INC. et al., | ) ) | |
| Defendants. | ) ) | |

This Rule 23 class action arises out of the installation of allegedly defective high-zinc-content "yellow brass" plumbing fittings in residences throughout the Las Vegas area. Several motions to reconsider are pending before the Court.

I.    FACTS AND PROCEDURAL HISTORY

Plaintiffs Waterfall Homeowners Association ("Waterfall") and Red Bluffs at the Crossings Owners Association, Inc. ("Red Bluffs") have filed the present Rule 23 class action. Plaintiffs represent their own 998 members directly but also wish to represent up to 10,000 homeowners associations representing up to 250,000 similarly situated homeowner members throughout the Las Vegas area via this class action. Plaintiffs seek damages pursuant to Chapter 40 of the Nevada Revised Statutes ("NRS") based upon damage and potential future damage to class members' homes arising out of the failure or potential future failure of yellow brass plumbing fittings and components manufactured by "Vanguard/Viega" and "Wirsbo/Uponor."

Plaintiffs sued the following Defendants in this Court: (1) Viega, Inc.; (2) Viega, LLC;

(3) VG Pipe, LLC; (4) Vanguard Piping Systems, Inc.; (5) Vanguard Industries, Inc.; (6) Viega GMBH & Co. KG; (7) Viega International GMBH; (8) Uponor Corp.; (9) Uponor Group; (10); Uponor, Inc.; (11) Wirsbo Co.; (12) Uponor Wirsbo Co.; (13) Centex Homes ("Centex"); (14) Dynamic Plumbing Systems Inc. of Nevada; (15) Interstate Plumbing and Air Conditioning, Inc.; (16) Interstate Plumbing and Air Conditioning, LLC, a.k.a. Interstate Services; and (17) James Manning.  Defendants 1–5 are referred to collectively herein as the "U.S. Viega Defendants." Defendants 6–7 are referred to collectively herein as the "German Viega Defendants." Defendants 1–7 are referred to collectively herein as the "Viega Defendants."  Defendants 8–9 are referred to collectively herein as the "Finnish Uponor Defendants."  Defendants 10–12 are referred to collectively herein as the "U.S. Uponor Defendants."  Defendants 8–12 are referred to collectively herein as the "Uponor Defendants."  Many of these Defendants have been sued in identical class actions by the same law firms, but with different named Plaintiffs.

      Waterfall sent its Chapter 40 notice to all Defendants except Manning on March 24, 2011.  On April 20, 2011, the German Viega Defendants responded by denying liability.  On June 22, 2011, Interstate responded by claiming the notice was defective.  On June 24, 2011, the U.S. Viega Defendants responded by claiming the notice was defective and disclaimed any liability.  On June 28, 2011, Centex responded by claiming the notice was defective.

      Red Bluffs sent its Chapter 40 notice to the Viega Defendants on June 11, 2011.  On July 28, 2011, Viega GMBH & Co. KG responded by claiming the notice was defective.  Plaintiffs sued Defendants in this Court on September 16, 2011.  The Complaint lists ten nominal causes of action: (1) Breach of Implied Warranties; (2) Breach of Express Warranties (Viega Defendants); (3) Breach of Express Warranties (Uponor Defendants); (4) Breach of Express Warranties (all Defendants except Viega and Uponor Defendants); (5) Negligence and Negligent Misrepresentation; (6) Strict Liability; (7) Declaratory and Equitable Relief; (8) Violation of Nevada Deceptive Trade Practices Act (all Defendants except Centex); (9) Alter Ego (Uponor

1  Defendants); and (10) Alter Ego (against Viega Defendants).  The nominal fifth cause of action
2  constitutes two separate causes of action.  The nominal seventh cause of action lists two
3  measures of relief but no independent cause of action.  The nominal ninth and tenth causes of
4  action are not independent causes of action but legal theories relevant to the other underlying
5  causes of action.
6         The Court recently decided several motions in a twenty-seven-page published order.
7  First, the Court treated the U.S. Viega Defendants' motion to strike class allegations as a motion
8  to deny certification and denied the motion, giving Plaintiffs leave to amend to include
9  allegations corresponding to Rule 23(b)(3).  Second, the Court dismissed several claims, with
10 leave to amend some of them, and ruled that Plaintiffs would have to join individual
11 homeowners as named Plaintiffs, and identify individual homeowners, not other associations, as
12 putative class members, to support Article III standing.  Third, the Court denied a motion to
13 dismiss based upon an improper Chapter 40 notice, because the question was too fact-intensive
14 to be determined before summary judgment.  Fourth, the Court granted a motion to dismiss as
15 against the Uponor Defendants for violation of the anti-claim-splitting rule.  Fifth, the Court
16 denied the German Viega Defendants' motion to dismiss for lack of personal jurisdiction based
17 upon agency jurisdiction.  Sixth, the Court denied a motion to stay the time for Uponor Corp.'s
18 responsive pleading.  Seventh, the Court ruled that the magistrate judge had erred in refusing to
19 sever the U.S. Viega Defendants from the present case, but that the error was harmless in light of
20 the Court's dismissal of the Uponor Defendants.  Four motions to reconsider are pending before
21 the Court.
22 **II.     ANALYSIS**
23        **A.     Motion No. 106**
24        U.S. Viega Defendants have asked the Court to reconsider severance.  They argue that the
25 Court was correct to rule that severance was appropriate but disagree that severance is moot

simply because Uponor Defendants have been dismissed. Movants note that three non-Uponor Defendants (Centex, Interstate Plumbing and Air Conditioning, Inc., and Interstate Plumbing and Air Conditioning, LLC (collectively, "Interstate")) remain in the case based upon those Defendants' installation or use of Uponor products. The Court previously ruled that severance was proper because the Uponor/Wirsbo Defendants and the Viega/Vanguard Defendants were sued based upon allegedly defective plumbing components whose defects were similar but which had been designed, composed, manufactured, and retailed separately.

In response, Plaintiffs ask the Court to reconsider dismissal of the Uponor Defendants for violation of the anti-claim-splitting rule, but rather sever Uponor Defendants, Centex, and Interstate for consolidation with the *Slaughter* case. The Court grants U.S. Viega Defendants' motion to reconsider and severs the claims as against Centex and Interstate.

### B. Motion No. 107

U.S. Viega Defendants ask the Court to reconsider dismissal of Vanguard Piping Systems, Inc. ("VSPI"), because it "had been merged out of existence" prior to this case and therefore lacked the capacity to be sued. VSPI was a Kansas corporation according to the Complaint, and Plaintiffs argue that Kansas law permits merged corporations or the resulting corporation to be sued. *See* Kan. Stat. Ann. § 17-6711 (1972) ("Any action or proceeding, whether civil, criminal or administrative, pending by or against any corporation which is a party to a merger or consolidation shall be prosecuted as if such merger or consolidation had not taken place, or the corporation surviving or resulting from such merger or consolidation may be substituted in such action or proceeding."). The Court denies the motion to reconsider.

### C. Motion No. 108

German Viega Defendants ask the Court to reconsider its ruling that there is personal jurisdiction over them in Nevada based upon agency jurisdiction. The Court relied upon *Bauman v. DaimlerChrysler Corp. (Bauman I)*, 579 F.3d 1088, 1094–95 (9th Cir. 2009), and Movants

argue that the Supreme Court's ruling in *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011) undermines that case. According to *Bauman I*, "[t]o satisfy the agency test, the plaintiff must make a prima facie showing that the subsidiary represents the parent corporation by performing services sufficiently important to the [parent] corporation that if it did not have a representative to perform them, the [parent] . . . would undertake to perform substantially similar services." *See* 579 F.3d at 1094 (internal quotation marks omitted; alterations in original). *Bauman I* was vacated, but the Court of Appeals reached the same conclusion as to the agency jurisdiction issue on May 18, 2011 after rehearing, based upon the same reasoning. *See Bauman v. DaimlerChrysler Corp. (Bauman II)*, 644 F.3d 909, 921–24 (9th Cir. 2011). The Supreme Court decided *Goodyear* on June 27, 2011. In that case, the Supreme Court ruled that a state court could not exercise general jurisdiction over a foreign subsidiary of Goodyear USA based purely upon the fact that some of the foreign subsidiary's (non-case-related) products reached the forum through the stream of commerce via the actions of other Goodyear USA affiliates. *See Goodyear*, 131 S. Ct. at 2851–52. All parties had agreed there was no specific jurisdiction, because the bus accident at issue did not occur within the forum. (*See id.*). Here, the German Viega Defendants stand in a different position than did the Goodyear subsidiaries from France, Luxembourg, and Turkey in that case. The German Viega Defendants are alleged to be not subsidiaries whose products came to the Nevada forum through no action of their own and who have no contact with Nevada directly or through their own subsidiaries, but rather they are alleged to be the parents of subsidiaries over which there is general jurisdiction in Nevada.

      Next, German Viega Defendants argue that the Court did not perform the seven-factor reasonableness analysis of personal jurisdiction:

> (1) the extent of the defendant's purposeful injection into the forum; (2) the defendant's burdens from litigating in the forum; (3) the extent of conflict with the sovereignty of the defendant's forum; (4) the forum state's interest in adjudicating

the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Ziegler v. Indian River Cnty.*, 64 F.3d 470, 475 (9th Cir. 1995). Movants have the burden of demonstrating a compelling case that jurisdiction is not reasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). They have not done so either in the present motion to reconsider, which includes no argumentation concerning the seven factors or reasonableness generally, or in the original motion to dismiss, which includes some argumentation, although not according to the seven factors. The original motion includes mostly uncontroversial citations to cases explaining the requirement of reasonableness. Movants rely mainly on a case from the Eastern District of Texas that predates *Baumer* by nearly three decades. The Court denies the motion.

       **D.**     **Motion No. 109**

Plaintiffs ask the Court to reconsider dismissal of their strict liability claim. Alternately, they ask the Court to certify the issue to the Nevada Supreme Court or to the Ninth Circuit for immediate appeal. The Court has already certified the question to the Nevada Supreme Court in another case.

The Court dismissed the strict liability claim because under *Calloway v. City of Reno*, 993 P.2d 1259 (Nev. 2000), a building is not a product for the purposes of strict liability, and damage to a building from a defective plumbing system constitutes damage to the building by itself causing only economic loss addressable in contract, not tort, *id.* at 1268–69. Plaintiffs note that the Nevada Supreme Court in *Olson v. Richard* ruled that "notwithstanding our holding in *Calloway*, a negligence claim can be alleged in a construction defects cause of action initiated under Chapter 40." 89 P.3d 31, 33 (Nev. 2004). Plaintiffs argue that the same reasoning should be applied to strict liability claims. The *Oslon* Court reasoned that the legislature in enacting Chapter 40 "did not intend for the economic loss doctrine to preclude a homeowner from alleging

a negligence claim in a construction defects cause of action initiated pursuant to Chapter 40." *Id.* It is not clear the same reasoning should apply to strict liability claims. The *Olson* Court was itself split.

**CONCLUSION**

IT IS HEREBY ORDERED that the Motion to Reconsider (ECF No. 106) is GRANTED.

IT IS FURTHER ORDERED that the Motions to Reconsider (ECF Nos. 107, 108, 109) are DENIED.

IT IS SO ORDERED.

Dated this 26th day of November, 2012.

_____
ROBERT C. JONES
United States District Judge